D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
UNITED STATES OF AMERICA,

**MEMORANDUM & ORDER**

-against-

**13-CR-438 (NGG)**

COREY JONES,

Defendant.
---------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendant's motion to suppress statements he made to government agents on June 21, 2013, or in the alternative, to hold a hearing as to the admissibility of these statements. For the following reasons, Defendant's motion is DENIED.

## I. BACKGROUND

Defendant Corey Jones is charged with one count of assault on a federal officer, in violation of 18 U.S.C. § 111. (Compl. (Dkt. 1).)

In 2013, Defendant was serving a 92-month sentence resulting from a 2007 conviction for possession of a firearm having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g). (See Compl. ¶ 2.) He was housed in a Residential Reentry Center ("RRC") in Brooklyn, where he allegedly violated the RRC rules by threatening a staff member. (See Gov't Mem. in Opp'n to Def. Mot. to Suppress ("Gov't Mem.") (Dkt. 22) at 3.)[1] As a result of Defendant's violation, on June 21, 2013, two Deputy U.S. Marshals, including Deputy

---

[1] All facts are based primarily on the Government's allegations contained in its submission and accepted as true for purposes of the court's analysis of Defendant's motion.

1

Westfield, came to the RRC to take Defendant into custody and transport him to the Bureau of Prisons ("BOP").[2] (Compl. ¶ 4.)

At the RRC office, the RRC staff and the Marshals informed Defendant that the Marshals were going to take him into custody to transport him. (Id.; Decl. of Michael Schneider, in Supp. of Mot. to Suppress ("Schneider Decl.") (Dkt. 20-1) ¶ 5.) The staff and the Marshals refused to allow Defendant to return to his dormitory to collect his belongings. (Schneider Decl. ¶ 6; Gov't Mem. at 3-4.) Defendant attempted to leave the office, and the Marshals again instructed him he was not free to leave. (Compl. ¶ 4.) Defendant called his mother on his cell phone about his belongings and stated during the conversation "shit is about to go down in here." (Gov't Mem. at 4.) After the call, the Marshals ordered Defendant to sit down and remove his hat, and Defendant refused, saying "let's do this" and/or "if you want it come get it, let's do this." (Id.; Schneider Decl. ¶¶ 9-10.) Defendant then allegedly assumed an aggressive stance and clenched his fists. (Gov't Mem. at 4.) Deputy Westfield attempted to place Defendant's arm behind his back in order to handcuff him, and Defendant allegedly pushed his other arm into Westfield's face. (Id.) A struggle ensued, during which Defendant allegedly bit Westfield's index finger, causing bleeding. (Id.) After Defendant stopped struggling, one of the Marshals asked if he was done fighting, and Defendant responded "I'm good. I'm good." (Id.)

Defendant was handcuffed and placed in a vehicle to be transported. (Id.) While in the car, Defendant asked whether he would face additional charges. (Id.) Deputy Westfield responded that he didn't know because the incident had only recently occurred. (Id.; Schneider Decl. ¶ 11.) Defendant stated that he did not "hit" Deputy Westfield, to which Westfield replied that Defendant bit him. (Gov't Mem. at 4.) Defendant did not say anything in response. (Id.)

---

[2] The Government states both that Defendant was being transported to MDC and to the courthouse. (Gov't Mem. at 3-4.) This factual discrepancy, however, has no bearing on the court's analysis of Defendant's motion.

At no time during these events was Defendant given Miranda warnings. (Schneider Decl. ¶ 12.)

Defendant was arrested on July 1, 2013, and charged with one count of assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1), 111(b), and 3551 et seq. (See Executed Arrest Warrant (Dkt. 3); Indictment (Dkt. 7) at 2.) On January 8, 2014, Defendant moved the court to suppress statements made to government agents on June 21, 2013, or in the alternative, to hold a hearing as to the admissibility of the statements. (Mot. to Suppress (Dkt. 20).) The court heard oral argument on the motion on February 7, 2014, and reserved decision. (See Min. Entry (Dkt. 23).)

## II. STANDARD

### A. The Fifth Amendment's Privilege Against Self-Incrimination

In Miranda v. Arizona, the Supreme Court held that the Government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). This means that that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. "Miranda instructs generally that an uncounseled statement made by a defendant during custodial interrogation should be suppressed from use by the government in its case-in-chief unless the prosecution proves that the suspect voluntarily waived his right to counsel and privilege against self-incrimination." United States v. Gaines, 295 F.3d 293, 297 (2d Cir. 2002) (citing Miranda, 384 U.S. at 444).

To determine whether a suspect is in custody for purposes of Miranda, "[a] court should consider whether a reasonable person would have *thought he was free to leave the police encounter at issue.*" Georgison v. Donelli, 588 F.3d 145, 156 (2d Cir. 2009) (emphasis in original). "[T]he free-to-leave inquiry constitutes a necessary, but not determinative, first step in establishing Miranda custody." United States v. Newton, 369 F.3d 659, 670 (2d Cir. 2004). The "ultimate inquiry . . . [is] 'whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Id. (quoting Caliornia v. Beheler, 463 U.S. 1121, 1125 (1983)).

In the case of prisoners, the mere fact of an individual's preexisting state of incarceration does not necessarily mean that he is in custody as understood by Miranda. See Georgison, 588 F.3d at 157. When "incarceration, not liberty, [is a suspect's] status quo," an inquiry into the presence or absence of arrest-like restraints carries less weight in the Miranda analysis. Newton, 369 F.3d at 670. In these circumstances, the "coercive-pressures test" offers an additional useful inquiry: "Miranda's 'in custody' requirement is met if questioning was 'conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak.'" Id. at 669, 670-671 (2d Cir. 2004) (quoting United States v. Morales, 834 F.2d 35, 38 (2d Cir. 1987)). In other words, in the prison context, custody for Miranda purposes is not present unless there exists a "measure of compulsion" or "restrictions on [the suspect's freedom] over and above ordinary prison confinement." Georgison, 588 F.3d at 157.

As for the interrogation prong of Miranda, interrogation includes not only direct questioning, but also its "functional equivalent," meaning "words or actions by the police (other than those normally attendant to arrest and custody) that the police should know are reasonably

4

likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). The Second Circuit has noted, however, that "the Innis definition of interrogation is not so broad as to capture within Miranda's reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges." Acosta v. Artuz, 575 F.3d 177, 191 (2d Cir. 2009) (quoting Caputo v. Nelson, 455 F.3d 45, 50 (1st Cir. 2006) (internal quotation marks omitted)). Nor is "subtle compulsion" or that fact that police "struck a responsive chord" in a suspect, alone, enough to constitute interrogation. See Innis, 446 U.S. at 303; see also Acosta, 575 F.3d at 190. Rather courts should assess, "in light of the totality of the circumstances," whether the police should have known that their conduct was "reasonably likely to elicit an incriminating response." Acosta, 575 F.3d at 191.

## III. DISCUSSION

As a preliminary matter, the court finds that no hearing is warranted on Defendant's motion. At oral argument Defense counsel and the Government agreed that there are no issues of fact that could be resolved at a hearing.[3] (Oral Arg. Tr. at 6:19-7:8.)

### A. Defendant's Statements in the RRC Office

The court finds Defendant was in custody while in the RRC office, but because he was not subjected to interrogation, there was no Miranda violation. On the facts as briefed, it it clear that Defendant would have reasonably believed he was not free to leave the encounter with the Marshals, see Georgison, 588 F.3d at 156, and was advised as much prior to the altercation. Although Defendant was serving a sentence at the RRC and was therefore subject to a certain

---

[3] The Government argues in its papers that Defendant's motion is facially insufficient to support an evidentiary hearing because it is accompanied by a declaration by defense counsel, who lacks personal knowledge of the relevant events. (Gov't Mem. at 6-9.) In light of the parties' agreement that there are no disputes of facts that could be resolved at a hearing and the court's denial of a hearing, the court finds this issue to be moot and declines to rule on it.

degree of restriction as a matter of course, the arrival of two marshals coupled with their directives that they were taking him into custody and he was not permitted to leave the office presented heightened restrictions on his freedom above and beyond his normal state of confinement. See id. at 157; Newton, 369 F.3d at 671. The Government's argument that a finding of custody requires Defendant to demonstrate that these restraints were also greater than those ordinarily placed on an inmate *in the course of being transferred* (Gov't Mem. at 12), is not supported by Second Circuit precedent, and the court declines to adopt that standard here.[4] The restrictive elements present during Defendant's interaction with the Marshals in the RRC office created an environment of "coercive pressure" that is sufficient for the court the find he was in custody at the time.

Regardless of whether Defendant was in custody, however, he was not subject to interrogation. Defendant claims that the Marshals' refusal to let him retrieve his belongings and their directive to sit down and take off his hat were "sure to provoke a response." (Schneider Decl. ¶ 16.) The court disagrees. On the facts accompanying the motion, there is no evidence that the Marshals did more than issue basic directives of the kind often "attendant to arrest and custody." Innis, 446 U.S. at 300. Their commands were neither questions nor were they probing or open ended statements that could be considered the "functional equivalent" of interrogation. Id. at 301. Although the Marshals' instructions may have "struck a responsive chord" with Defendant and indeed did provoke him to speak, this does not mean that it was reasonably foreseeable that the Marshals' conduct would elicit such a response. Id. at 303. The court finds that Defendant was not subjected to custodial interrogation while in the RRC office and therefore

---

[4] Furthermore, the Government's argument is inconsistent on this point. If the restraints ordinarily associated with transferring an inmate do not give rise to a finding of custody, then the Government's concession that Defendant was in custody while being transported in the car makes little sense.

6

there was no Miranda violation. Accordingly Defendant's motion to suppress his statements while in the RRC office is denied.

### B. Defendant's Statements in the Car

The Government does not dispute that Defendant was in custody after the altercation when he was being transported in the car. (Gov't Mem. at 11 n.3.) The Government argues, however, that Defendant was not subjected to interrogation. Defendant contends that Deputy Westfield's statements were the equivalent of interrogation because he should have known that they were likely to "engender a response." (Oral Arg. Tr. at 3:3-4:23.) Specifically he argues that Westfield's statement that he did not know whether Defendant would face additional charges constituted discussion of the substance of the case that was reasonably likely to provoke some sort of response such as a denial, apology, or protestation. (Id. at 3:20-4:8.)

The court finds Defendant's argument unpersuasive. The Second Circuit and other circuits have declined to adopt a rule that all statements to a suspect by police concerning the charges or evidence against him are per se interrogation. Acosta, 575 F.3d at 191 (collecting cases). The facts show that Defendant initiated the conversation with Deputy Westfield in the car by asking whether he would face additional charges, and Westfield responded to his question.[5] There is no evidence that his statement was accompanied by inquiry, threats, cajoling, or other forms of compulsion. It strains the Innis standard to find that Westfield should have known that his unadorned response to Defendant's question was "reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301. It cannot be concluded on these facts that Westfield's response was the "functional equivalent" of interrogation. Id. Accordingly, Defendant's motion to suppress his statement that he did not "hit" Deputy Westfield is denied.

---

[5] While Defendant does not concede this fact, he admits that he is unable to dispute it because Defendant does not recall. (Oral Arg. Tr. at 6:25-7:8.)

7

### C. Defendant's Silence in the Car

At oral argument, the Government confirmed that it intends to introduce at trial Defendant's silence following Deputy Westfield's statement that Defendant bit him. (Oral Arg. Tr. at 12:2-12.) Although Defendant did not brief this issue in his motion to suppress papers, at oral argument, defense counsel asserted that Defendant's silence should be suppressed because Westfield's "accusation that [Defendant] bit [him] is the functional equivalent of interrogation." (Id. at 13:10-11.) Defense counsel argued that Defendant's silence was the product of custodial interrogation and should be suppressed just as any statement under the same circumstances would be suppressed. (Id. at 13:6-17.)

The Supreme Court has addressed the admissibility of a suspect's silence in a variety of scenarios. A defendant's silence as part of a voluntary noncustodial interaction with the police may be used against him as evidence at trial. See Salinas v. Texas, 133 S. Ct. 2174 (2013). A defendant's *post-arrest* silence after provision of Miranda warnings, however, may not be used at trial either in the Government's case in chief or as impeachment material. See Wainwright v. Greenfield, 474 U.S. 284, 292 (1986); Doyle v. Ohio, 426 U.S. 610, 617-618 (1976). The Supreme Court reasoned that use of such evidence violated due process because Miranda warnings carry an implicit assurance that an arrestee will not be penalized for his silence, which may be nothing more than an exercise of his Miranda rights. Doyle, 426 U.S. at 617-618. When, as here, the case concerns post-arrest, *pre-Miranda* silence, a defendant's silence may be used for impeachment purposes should the defendant testify. Fletcher v. Weir, 455 U.S. 603, 607 (1982). Neither the Supreme Court nor the Second Circuit has addressed whether such evidence may be introduced in the Government's case in chief.

8

Against this legal backdrop, other circuits have considered the issue. In <u>United States v. Frazier</u>, the Eight Circuit upheld admission of evidence of a defendant's post-arrest, pre-<u>Miranda</u> silence in response to an officer's statement that he was under arrest for suspicion of narcotics. 408 F.3d 1102 (8th Cir. 2005). Reasoning that "there was no governmental action at that point inducing his silence," the court found that the element of compulsion was absent and therefore the use of the defendant's silence in the Government's case-in-chief did not violate the Fifth Amendment. <u>Id.</u> at 1111. The Fourth and Eleventh Circuits have also held post-arrest, pre-<u>Miranda</u> silence to be admissible, reasoning that the due process concerns articulated in <u>Doyle</u> were not implicated prior to the giving of <u>Miranda</u> warnings. See <u>United States v. Rivera</u>, 944 F.2d 1563, 1568 (11th Cir. 1991); <u>United States v. Love</u>, 767 F.2d 1052, 1063 (4th Cir. 1985). By contrast, on facts similar to <u>Frazier</u>—a defendant's silence in response to being placed under arrest prior to <u>Miranda</u> warnings—the Seventh Circuit found introduction of the silence in the prosecutor's case in chief violated the privilege against self-incrimination. See <u>United States v. Hernandez</u>, 948 F.2d 316, 323 (7th Cir. 1991). So too did the Ninth Circuit, reasoning that an arrestee's constitutional right to remain silent did not depend on the administration of <u>Miranda</u> warnings, but was triggered at the moment the defendant was placed into custody. <u>United States v. Velarde-Gomez</u>, 269 F.3d 1023, 1029 (9th Cir. 2001). In <u>Velarde-Gomez</u>, however, the defendant's silence was in response to direct questioning by government agents. <u>Id.</u> at 1027. The District of Columbia Circuit held that a defendant's post-arrest, pre-<u>Miranda</u> silence should be excluded, even if no questioning had occurred. <u>United States v. Moore</u>, 104 F.3d 377, 385 (D.C. Cir. 1997). The court reasoned:

> Although in the present case, interrogation per se had not begun, neither <u>Miranda</u> nor any other case suggests that a defendant's protected right to remain silent attaches only upon the commencement of questioning as opposed to custody. While a

> defendant who chooses to volunteer an unsolicited admission or statement to police before questioning may be held to have waived the protection of that right, the defendant who stands silent must be treated as having asserted it.

Id. at 385.

From these cases, the court draws a few observations. First, the presence of compulsion, through interrogation or other conduct by government agents seems to factor into some courts' decisions. See Frazier, 408 F.3d at 1111; Velarde-Gomez, 269 F.3d 1027. Second, some courts emphasize that custody triggers Fifth Amendment protection of silence regardless of whether questioning had begun. See Velarde-Gomez, 269 F.3d at 1029; Moore, 104 F.3d at 385; Hernandez, 948 F.2d 316, 323. Other courts, invoking Doyle and Fletcher, draw the line at the provision of Miranda warnings. See Rivera, 944 F.2d at 1568; Love, 767 F.2d at 1063. Finally, the District of Columbia Circuit treats a defendant "who stands silent" as having asserted the right to remain silent. Moore, 104 F.3d at 385.

In the instant case, the court finds that suppression of Defendant's silence is not required. First, although Defendant was in custody at the time, he did not face questioning or any sort of government compulsion inducing his silence. The concerns that undergird the Fifth Amendment's privilege against self-incrimination and the Due Process Clause relate to government compulsion or coercion, which Miranda found are inherently present in circumstances of custodial interrogation. See Dickerson v. United States, 530 U.S. 428, 433-35 (2000) (citing Miranda, 384 U.S. at 439, 455). Westfield's two statements that he did not know whether Defendant would face charges and that Defendant bit him fall short of the Innis standard for interrogation. Rather, they are analogous to a statement of the charges or evidence against Defendant. See Acosta, 575 F.3d at 191. Had Defendant responded under these circumstances, his statement would not be suppressed under Miranda due to the absence of interrogation. The

court declines to adopt an approach that could result in differential treatment of silence as compared to statements, which could occur under the Ninth and District of Columbia Circuits' framework deeming protection of an arrestee's silence to be triggered by custody alone.

Second, there is no evidence that Defendant's silence was intended to assert his right to remain silent. Unlike in Moore, Defendant did not "stand[] silent"; rather, he initiated conversation with the Marshals and then fell quiet after a brief back and forth. The court declines to treat this silence as an assertion of the privilege, let alone an "unequivocal invocation" of it. Cf. Salinas, 133 S. Ct. at 2181 ("Our cases establish that a defendant normally does not invoke the privilege by remaining silent."); United States v. Okatan, 728 F.3d 111, 119 (2d Cir. 2013) (noting that in the context of questioning, a defendant "who simply stopped talking during the course of an interrogation" is distinct from one who "affirmatively claimed the privilege before he fell silent").

Therefore the Government's introduction of evidence of Defendant's silence either for impeachment purposes or in its case in chief does not violate the Fifth Amendment.[6] The court notes, however, that its conclusion here does not determine whether such evidence is admissible. Should the Government seek to introduce Defendant's silence as an admission, it must demonstrate admissibility under Federal Rule of Evidence 801(d) and any other applicable rules. This issue may be briefed in motions in limine.

---

[6] Defendant asserts without argument that his statements should also be suppressed pursuant to the Sixth Amendment and 18 U.S.C. § 3501. To the extent that Defendant relies on these arguments, they both fail. The Sixth Amendment right to counsel is offense specific and attaches at the time formal charges are brought for that offense. See United States v. Moore, 670 F.3d 222, 234-35 (2d Cir. 2012), cert. denied, 133 S. Ct. 48 (2012). At the time of Defendant's statements, he had not yet been charged with assault of a federal officer, and any right to counsel that may have existed in relation to his prior charge (and conviction) for possession of a firearm by a felon did not extend to cover any alleged interrogation in connection with the present charge. As for § 3501, the Supreme Court held this statute to be unconstitutional in United States v. Dickerson on the basis that Congress could not displace Miranda's warning/waiver framework with § 3501's alternative voluntariness analysis because Miranda is a constitutional ruling that cannot be superseded legislatively. 530 U.S. at 444.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Defendant's Motion to Suppress Defendant's statements made to government agents and Defendant's silence while in transport on June 21, 2013.

SO ORDERED.

Dated: Brooklyn, New York
   March 10, 2014

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge